# Exhibit A

**ELECTRONICALLY FILED**
Superior Court of California
County of Ventura

11/04/2025
K. Bieker
Executive Officer and Clerk

By: _____ Deputy Clerk

Maryssa Padilla

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800 Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff and the Putative Class

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF VENTURA**

| | |
|---|---|
| KYLE BOURNE, individually and on behalf of all persons similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>FIDELITY LIFE ASSOCIATION, an Illinois entity,<br><br>        Defendant. | Case No.    2025CUMT053636<br><br>**CLASS ACTION COMPLAINT FOR UNLAWFUL SPAMMING IN VIOLATION OF B&P CODE SECTION 17529.5** |

Ventura Superior Court transmitted through eFiling 11/04/2025 01:55:54 PM

## I.   INTRODUCTION

1.      California's robust Anti-Spam Law (Business & Professions Code §17529.5) imposes both strict liability and substantial liquidated damages on companies that benefit from deceptive unsolicited commercial e-mail advertisements (a/k/a "spam").[1]  It empowers recipients of such spam to sue even if they were neither misled nor harmed by the spam,[2] dispense with the requirement of proving intent or scienter,[3] and is intended to force companies to actively monitor their advertising buy imposing exceptionally broad liability.[4]

2.      Plaintiff received the spam attached hereto as **Exhibit "A"** promoting Defendant's life insurance services.  As shown below, the above e-mail violates Section 17529.5 in multiple ways.  Defendant is strictly liable for liquidated damages of $1,000 to Plaintiff and each class member.

## II.   PARTIES

3.      Plaintiff is a resident and domiciliary of the state of California.

4.      Defendant is a life insurance association that promotes its services through unlawful spamming.

## III.   JURISDICTION AND VENUE

5.      As a Court of general jurisdiction, this Court has jurisdiction over all claims asserted herein.

---

[1] *See Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 829-30 (Cal. Ct. App. 2d Dist. 2011) (characterizing section 17529.5 as "imposing strict liability on advertisers who benefit from (and are the ultimate cause of) deceptive e-mails").

[2] *Hypertouch*, 192 Cal. App. 4th at 822 (holding that section 17529.5 "does not require the plaintiff to prove that it relied on the deceptive commercial e-mail message or that it incurred damages as a result of the deceptive message"); id. at 829 ("the statute permits a recipient of a deceptive commercial e-mail to bring suit regardless of whether they were actually mislead or harmed by the deceptive message").

[3] *See Hypertouch*, 192 Cal. App. 4th at 821 ("section 17529.5 … does not include any 'scienter' or intent requirement"); id. at 821-22 ("[L]ike other California statutes prohibiting false or misleading business practices, the statute makes an entity strictly liable for advertising in a commercial e-mail that violates the substantive provisions described in section 17529.5, subdivision (a) regardless of whether the entity knew that such e-mails had been sent or had any intent to deceive the recipient.").

[4] *Hypertouch*, 192 Cal. App. 4th at 820 ("[S]ection 17529.5 does not require the plaintiff to show that the defendant actually made a false or deceptive statement…. [B]y its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails. [¶] Other portions of the statute confirm that the Legislature did not intend the statute to apply solely to those entities that actually send or initiate a deceptive e-mail."); id. at 821 ("In sum, both the text and legislative history of S.B. 186 make clear that section 17529.5 was intended to apply to entities that advertise in deceptive commercial e-mails, not only the spammers who send them.").

6.    Venue is proper in this County because many of the class members received the spam in this County and because Defendant is not a citizen or resident of California.

## IV.    FACTUAL BACKGROUND

7.    Plaintiff is a California resident and the owner of the above e-mail address.

8.    Plaintiff's e-mail address is a "California e-mail address" because Plaintiff ordinarily accesses the e-mail address from a computer in California. *See* Bus. & Prof. Code § 17529.1(b).

9.    The spam identified above is a "'Commercial e-mail advertisement' because it was initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit. *See* Bus. & Prof. Code § 17529.1(c).

10.    Plaintiff never gave "direct consent" to receive commercial e-mail advertisements from Defendant or its marketing agents. *See Balsam v. Trancos, Inc.*, 203 Cal. App. 4th 1083, 1099 (2012) (noting that defendant acknowledged that recipients of its commercial e-mails did not receive "direct consent" to receive e-mails from defendant or its advertisers).

11.    There are three primary ways in which commercial e-mail can run afoul of California's Anti-Spam Law (Bus. & Prof. Code § 17529.5):

a.    **Unauthorized Use of a Domain Name in Violation of Section 17529.5(a)(1).** A domain name is the unique Internet address used to identify the origin of a website or an email transmission (e.g., "apple.com" or "yahoo.com"). It functions as a digital signature, signifying the source of the communication and enabling recipients to verify the sender's identity. Section 17529.5(a)(1) prohibits any person or entity from advertising in an email that is "accompanied by a third party's domain name without the permission of the third party." Bus. & Prof. Code § 17529.5(a)(1). This provision was enacted to prevent spammers from misappropriating the goodwill of trusted companies by embedding their domain names into headers, "From" fields, or hyperlinks to create the false impression of legitimacy. Misusing another entity's domain name deceives recipients, exposes them to fraud, and undermines trust in electronic communications. Courts have recognized that such spoofing practices fall

squarely within the statutory prohibition. *See Balsam*, 203 Cal. App. 4th at 1097–98 (discussing § 17529.5(a)(1)'s application to domain name misuse when a domain name is inaccurate and not traceable to the actual sender).

b. **Misrepresented Header Information In Violation of Section 17529.5(a)(2).** An email header is the portion of an electronic mail message that contains the routing, addressing, and technical information necessary for the message to be transmitted and delivered across the internet. Unlike the visible body of an email, the header records the path the message takes from the sender to the recipient and includes fields such as the "From," "To," "Date," "Subject," "Reply-To," "Return-Path," "Received" lines, and the originating Internet Protocol (IP) address. The header serves as the digital equivalent of a postmark and return address on a physical letter—it discloses who sent the message, the servers through which it traveled, and how it reached the recipient's inbox. Misrepresenting this information conceals the true sender's identity and impedes spam filters. *See* Bus. & Prof. Code § 17529.5(a)(2); *Balsam*, 203 Cal. App. 4th at 1101.

c. **Deceptive Subject Line or Contents in Violation of Section 17529.5(a)(3).** This section not only prohibits deceptive subject lines but also affirmatively requires accuracy in the material facts contained in the content of commercial e-mail,[5] and is intended to punish advertisers who trick recipients into opening messages they otherwise would ignore, thereby wasting time, invading privacy, and frustrating spam filters. *See Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334, 342-43 (2010).

12. The spam violates Section 17529.5 in the following ways:

a. **Misrepresented Header In Violation of Section 17529.5(a)(2).** The header of the e-mail is forged and misleading because it purports to be sent by "Fidelity Life" but the actual sending address is Mary@updates.tiktoktofreedom.com, a domain wholly unrelated to Fidelity Life. This discrepancy conceals the true origin of the message and

---

[5] For violations of subdivision (a)(3), "the plaintiff need not prove actual falsity, but only that the offending statement was 'likely to mislead' the recipient." *Hypertouch*, 192 Cal. App. 4th at 823 n.6.

makes it impossible for a recipient to trace or verify who actually sent it. *See Balsam v. Trancos, Inc.*, 203 Cal. App. 4th 1083, 1100 (2012).    Here, the domain "tiktoktofreedom.com" masks the sender's identity, rendering the e-mail untraceable to Fidelity Life and creating the false impression that the communication originated directly from the company or its licensed agents.    The message metadata shows that SPF, DKIM, and DMARC authentication aligns only with the obscure domain, not with Fidelity Life.    In sum, the header is forged and misrepresented because it masks the sender's true identity behind an unaffiliated domain.

b.  **Deceptive Subject Line and Contents in Violation of Section 17529.5(a)(3).**  This section prohibits deceptive subject lines and imposes an affirmative duty of accuracy in the material facts contained in the content of commercial e-mail.    Here, the subject line— **"Get Your Free $1,000,000 Term Life Policy Quote"**— is deceptive because in at least four ways. *First*, it conveys a materially false impression that the recipient is being offered an immediate, no-cost life insurance policy or guaranteed quote from Fidelity Life. In reality, recipients are directed to lead-generation or affiliate marketing pages that solicit personal information before disclosing eligibility or pricing. A promise of a "free $1,000,000 policy quote" falsely suggests a direct, cost-free benefit, when in fact the offer is contingent on subsequent sales pitches and third-party processing—thus constituting a deceptive subject line under the statute. *Second*, the e-mail also misrepresents who is advertising. It gives the impression that Fidelity Life is the advertiser and sender, but the domain "tiktoktofreedom.com" indicates it was actually distributed by a marketing affiliate or unlicensed third-party lead generator. Fidelity Life—or its marketing partners—are liable as the advertiser because the e-mail promotes Fidelity Life's insurance services, even if Fidelity Life did not personally send the message. *Third*, the e-mail fails to include accurate and functional identification or opt-out mechanisms allowing the recipient to contact the sender or unsubscribe from future communications.    The "tiktoktofreedom.com" domain offers no valid return address or company contact page, and there is no visible disclosure

explaining the sender's relationship to Fidelity Life. This omission deprives recipients of the ability to opt out or verify the sender's legitimacy, further compounding the deception. Each independently satisfies the statutory standard of being "likely to mislead a reasonable recipient" under § 17529.5(a)(2), making the email unlawful.

13. Plaintiff and all class members who have received the same or similar violative e-mail advertising Defendant's products are each entitled to liquidated damages of $1,000 per e-mail. *See* Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

14. Although a plaintiff need not plead or prove actual damages to bring a claim under the statute, Plaintiff has in fact suffered concrete, particularized harm as a result of Defendant's conduct. Plaintiff spent valuable time and attention identifying, reading, and deleting the deceptive email; incurred opportunity costs and lost productivity; and suffered depletion of device and network resources, including storage space, bandwidth usage on a metered data plan, and battery life. The unauthorized domain name, misleading headers and subject lines also invaded Plaintiff's privacy and disrupted the ordinary use and enjoyment of Plaintiff's email account, diminishing its value as a communication tool and necessitating additional filtering and security precautions. These injuries were directly caused by Defendant's unlawful emails and are redressable by statutory and injunctive relief.

15. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5.

## V. CLASS ACTION ALLEGATIONS

16. Plaintiff brings this action on behalf of the following class:

**All natural persons using California email addresses who received any commercial email advertising Defendant's services that contained (a) falsified, misrepresented, or forged header information; (b) any misrepresented domain name; or (c) materially misleading contents in violation of Business & Professions Code □17529.5.**

17. The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff

reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

18.    **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but Plaintiff is informed and believes, and thereon, alleges that there are at least 5,000 members of the Class.

19.    **Typicality**. Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct as described in this Complaint.

20.    **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously.

21.    **Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

   a.    Whether Defendant sent unsolicited commercial e-mail to Class members;

   b.    Whether the e-mails were sent in violation of Business and Professions Code Section 17529.5.

22.    **Superiority**.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.

23.    **Ascertainability**. Defendant keeps computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendant has one or more

databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses.

### VI. CAUSES OF ACTION

### Violation of Cal. Business & Professions Code § 17529.5

24. Plaintiff received the above unsolicited commercial e-mail at Plaintiff's California e-mail address within one year prior to filing the Complaint at a California e-mail address.

25. As shown above, the spam violated one or more provisions of Section 17529.5.

26. Defendant is strictly liable for violation of Section 17529.5 for sending the spam.

27. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5 that would justify a reduction in liquidated damages.

28. Plaintiff and every Class member who received the above e-mail are entitled to $1,000 in liquidated damages from Defendant up to one million dollars per incident, (Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii)), and to recover reasonable attorneys' fees and costs, (Cal. Bus. & Prof. Code § 17529.5(b)(1)(C)).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

A. An order certifying that the action be maintained as a class action, that Plaintiff be designated as the class representative, and that undersigned counsel be designated as class counsel;

B. For all available legal, equitable, and declaratory relief;

C. For liquidated damages;

D. For punitive damages;

E. For attorneys' fees and costs as allowed by law; and

F. For any and all other relief at law or equity that may be appropriate.

Dated: November 4, 2025          PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott J. Ferrell
Attorneys for Plaintiff and Punitive Class

# EXHIBIT A

From: Fidelity Life Coverage <Mary@updates.tiktoktofreedom.com>
Date: 10/20/25 2:43 AM (GMT-08:00)
To: kylebourne21@yahoo.com
Subject: Get Your Free $1,000,000 Term Life Policy Quote










Rates shown for sample ages at issue are based on best class available and are available within monthly electronic drafts. Rates subject to underwriting and are not guaranteed. Other rating classes, level periods, and coverage amounts are available. Like most insurance policies, Fidelity Life's policies contain exclusions, limitations, reductions of benefits and terms for keeping them in force. For complete costs and details, contact your Fidelity Life Representative.

This is an advertisement. If you would like to unsubscribe from future promotional emails from FC Insurance, click here or write us at FC Insurance, 3400 N Central Expy, Suite #110-330, Richardson, TX 75080. FC Insurance. All rights reserved.